IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


AMY COPPE,                                          Case No. 2:14-cv-2598

            Plaintiff,

      v.

THE SAC & FOX CASINO
HEALTHCARE PLAN and
BENEFIT MANAGEMENT, INC.,

            Defendants.


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................................i

TABLE OF AUTHORITIES ..............................................................................................ii

NATURE OF THE MATTER..............................................................................................1

STATEMENT OF FACTS ...................................................................................................1

QUESTION PRESENTED....................................................................................................2

ARGUMENT...........................................................................................................................2

    I.     STRONG FEDERAL POLICIES DICTATE THAT TRIBAL COURTS
          DETERMINE THEIR OWN JURISDICTION AND LITIGANTS EXHAUST
          THEIR TRIBAL REMEDIES ..................................................................................3

    II.    NO EXCEPTION TO TRIBAL COURT COMITY APPLIES...................................4

    III.   COMITY DICTATES THIS MATTER MUST BE DISMISSED OR STAYED
          FOR THE TRIBAL COURT TO DETERMINE ITS JURISDICTION AND
          THE PLAINTIFF TO EXHAUST HER TRIBAL COURT REMEDIES...................7

CONCLUSION.........................................................................................................................8

i

## TABLE OF AUTHORITIES

**Cases**

*Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006)........................................................................ 5, 7

*Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987) ..................................................................... 3

*Kerr-McGee v. Farley*, 115 F.3d 1498 (10th Cir. 1997) .............................................................. 5, 7

*Montana v. United States*, 450 U.S. 544 (1981) ....................................................................... 5, 6, 7

*Smith v. Moffett*, 947 F.2d 442 (10th Cir. 1991)........................................................................... 3, 4

*Strate v. A-1 Contractors*, 520 U.S. 438 (1997) .............................................................................. 6

*Texaco v. Zah*, 5 F.3d 1374 (10th Cir. 1993)........................................................................ 3, 4, 5, 7

*Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226 (10th Cir. 2014) ......................................... 5

**Statutes**

29 U.S.C. § 1132........................................................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12 ................................................................................................. 6

Sac and Fox Rule of Civil Procedure 112......................................................................................... 6

The Sac and Fox Casino Health Care Plan, through undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss for Failure to Exhaust Tribal Remedies.

## NATURE OF THE MATTER

This Motion is based upon well-established principles of comity under federal law that require this Court to dismiss or stay this action while the Sac and Fox Nation Tribal Court determines its jurisdiction to hear this matter and Plaintiff exhausts her remedies in that court. Plaintiff's Complaint sets forth a denial of insurance benefits under the Sac & Fox Casino Health Care Plan (the "Plan"). Such claims are specifically excluded from the Employee Retirement Income Security Acts' ("ERISA") grant of exclusive jurisdiction in the federal courts. The Plan is managed from the reservation trust lands of the Sac and Fox Nation of Missouri in Kansas and Nebraska ("Tribe") and is managed, in part, by the Tribal Council itself. Furthermore, Plaintiff's relationship with the Plan and the Casino was a commercial relationship voluntarily entered into by Plaintiff. Any judgment rendered against the Plan would likely be paid for out of the Tribal treasury. As such, comity dictates that this Court not hear this matter until the Tribe's court has had a full opportunity to examine its jurisdiction to adjudicate Plaintiff's claim and Plaintiff exhaust her Tribal court remedies.

## STATEMENT OF FACTS

The Sac and Fox Nation of Missouri in Kansas and Nebraska is a federally-recognized Indian tribe. Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 80 Fed. Reg. 9 (January 14, 2015). The Sac & Fox Casino is a non-corporate operating arm of the Tribe. *See* Affidavit of Martin R. Gist attached hereto as **Exhibit 1,** ¶ 5. From December 1, 2010 until November 30, 2011, the Casino maintained a self-funded

plan of employee healthcare benefits. Exhibit 1, ¶ 6. The benefits were available to all full time employees of the Casino. Exhibit 1, ¶ 7. The money to fund the Plan was allocated from the Casino's general operating expenses. Exhibit 1, ¶ 8. The Plan was managed by the Tribe's Council members. Exhibit 1, ¶ 9. The Plan hired Benefits Management Inc. ("BMI") as a third-party administrator for the Plan. Exhibit 1, ¶ 10. Although BMI made the decision to deny Plaintiff benefits, Plaintiff's Complaint, nevertheless, alleges that the Plan is responsible for her allegedly being denied benefits. *See* Complaint at ¶¶ 55 and 56. Any decision by the Plan to deny benefits would have been made on the Tribe's reservation trust land by the Tribal Council. Exhibit 1, ¶ 11. Should Plaintiff's claims succeed, the money to pay any judgment would likely come directly from the Tribal treasury or the Casino's general operating fund. Exhibit 1, ¶ 12. Plaintiff began her employment with the Casino on June 5, 1997 and voluntarily left her employment on February 7, 2012. Exhibit 1, ¶¶ 13 and 14. An employment relationship is obviously a voluntary commercial relationship.

## QUESTION PRESENTED

Should this matter be dismissed or stayed while the Sac and Fox Tribal Court determines its jurisdiction and Plaintiff exhausts her remedies in the Sac and Fox Nation Tribal Court?

## ARGUMENT

This matter should be dismissed or stayed while the Sac and Fox Tribal Court determines its jurisdiction and Plaintiff exhausts her remedies in that court. Well-established Congressional policy encourages the growth of tribal sovereignty. Part of this is developing and maintaining tribal courts. The United States Supreme Court has recognized this policy. It has ruled on numerous occasions that where there is a question regarding tribal court jurisdiction, the tribal court, subject to certain exceptions, must first be allowed to determine its own jurisdiction. A

federal court must abstain from hearing the matter until the tribal court has made its decision and the litigant has exhausted its remedies in tribal court.

In this matter, where the activity complained of occurred on the Tribe's reservation trust land, involved a voluntary commercial relationship between the Plaintiff and an alleged decision by the Tribal Counsel regarding that relationship, and any judgment would impact the Tribe's treasury, there can be no doubt that jurisdiction appropriately lies in the Tribe's court. The Tribe's court must be allowed to determine its own jurisdiction, and this matter must either be dismissed or stayed while Plaintiff exhausts her remedies in the Tribe's court.

## I.    STRONG FEDERAL POLICIES DICTATE THAT TRIBAL COURTS DETERMINE THEIR OWN JURISDICTION AND LITIGANTS EXHAUST THEIR TRIBAL REMEDIES

"Congress has enunciated a strong interest in promoting tribal sovereignty, including the development of tribal courts." *Smith v. Moffett*, 947 F.2d 442, 444 (10th Cir. 1991), citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14-15 (1987).

> [T]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal court unless affirmatively limited by a specific treaty provision or federal statute.

*Iowa Mutual*, 480 U.S. at 18. As a matter of comity, a federal court should abstain from hearing a matter if the matter appears to also be subject to tribal jurisdiction until the parties have exhausted tribal remedies. *Texaco v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993). Exhaustion of tribal remedies is not merely a defense to be raised or waived. Congressional concerns for tribal sovereignty create deeper considerations; it is important enough for a court to raise the issue *sua sponte*. *Smith*, 947 F.2d at 445. Federal policy dictates that the federal court "stay its hand" in order to give the tribal court a full opportunity to determine its own jurisdiction. *Iowa Mutual*, 480 U.S. at 16.

3

Furthermore, this principle applies whether a case is currently pending in tribal court or not. *Smith*, 947 U.S. at 444; *Texaco*, 5 F.3d at1376. In *Smith*, the Tenth Circuit reviewed a civil rights action brought in U.S. District Court for New Mexico. The action was brought against tribal and federal officials. Noting that the plaintiff had not filed in tribal court, the court wrote, "comity [is] a concern even when a case filed in the federal court has not yet been filed in tribal court." *Smith* at 444. Finding that the complaint alleged reservation activity, the Tenth Circuit noted probable tribal court jurisdiction. "Jurisdiction presumptively lies in tribal court . . . unless Congress has expressly limited that jurisdiction." *Smith* 947 F.2d at 444. It ordered the case remanded to the District Court to determine whether the claims arose on reservation land and if the plaintiff had exhausted his tribal court remedies.

In our case, the alleged denial of benefits occurred on reservation trust land. There is, thus, a presumption that the tribal court has jurisdiction and that the tribal court must be given the first opportunity to determine its jurisdiction. Only if one of the exceptions set forth below applies should this Federal Court first determine the Tribal court's jurisdiction.

## II.      NO EXCEPTION TO TRIBAL COURT COMITY APPLIES

The general rule that tribal courts determine their own jurisdiction and litigants must exhaust their remedies in tribal court is subject to some exceptions. The question of whether a tribal court has jurisdiction to hear a matter should be conducted by the tribal court itself, unless: (1) the assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) tribal jurisdiction is patently violative of express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction; (4) where it is plain that no federal grant provides for governance of non-Indians for conduct on land covered by the rule for non-Indian fee land promulgated in *Montana v. United States*, 450

4

U.S. 544 (1981); or (5) it is otherwise clear that the tribal lacks jurisdiction. *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006); *Texaco*, 5 F.3d at 1376.

If none of these exceptions are present, then the court will make the comity analysis. So long as the policies underlying comity are satisfied, the party must exhaust their tribal remedies before being heard by a federal court. *Kerr-McGee v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997). Policies supporting tribal exhaustion are: (1) Congressional policy of supporting tribal self-government; (2) promotion of the orderly administration of justice; and (3) obtaining tribal court expertise. *Texaco*, 5 F.3d at 1377. However, where the dispute arises on the reservation, there is no discretion to deny comity. *Kerr-McGee*, 115 F.3d at 1507.

Furthermore, a party seeking to avoid tribal court exhaustion by invoking an exception must make a "substantial showing" that the exception applies. *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1238 (10th Cir. 2014). Thus, it is on Plaintiff to demonstrate that an exception applies. However, even if the Plan had the burden, it is clear in this case that no exception applies.

Tribal court jurisdiction is *not* being asserted for the purposes of harassment or in bad faith. To the contrary, as this is a lawsuit effectively against the Tribe itself, the Tribe has a paramount interest in the development of its court and Tribal jurisprudence on issues involving the Tribe. This interest is in perfect harmony with Congressional policy on developing Tribal sovereignty and courts. There is no harassment or bad faith.

There is no express jurisdictional prohibition on the Tribal court hearing this matter. To the contrary, claims for ERISA benefits brought under 29 U.S.C. § 1132(a)(1)(B) are specifically excluded from ERISA's provisions on exclusive federal court jurisdiction. 29 U.S.C. § 1132(e)(1). There is no jurisdictional prohibition on the Sac and Fox Tribal Court hearing this matter.

Exhaustion of Tribal court remedies is not futile.  Plaintiff will be provided a full and fair opportunity to challenge the Tribal court's jurisdiction.  The Sac and Fox Tribal Court Rules of Civil Procedure provide for a specific mechanism to challenge that court's jurisdiction.  In fact, the rule is nearly identical to Federal Rule of Civil Procedure 12(b).  See Sac and Fox Rule of Civil Procedure 112(b).  See www.sacandfoxks.com.  Plaintiff can bring an immediate challenge to the Tribal court's jurisdiction if she so wishes.

This matter is not subject to the general rule sent forth by the *Montana* decision.  The prohibitions on tribal jurisdiction announced in *Montana* related to a tribe's ability to regulate the activity of *non-Indians* on *non-Indian* fee land.  *Montana*, 450 U.S. at 564-65.  As set forth herein, Plaintiff's claim alleges a decision made by the Plan.  Any such decision made by the Plan would have been made on the Tribe's reservation trust land.  Exhibit 1, ¶ 11.  Additionally, as the Plan was ultimately managed by the Tribal Council, Plaintiff's claim involves the Tribal Council.  Thus, her claim involves the activity of Indians—the Tribal Council itself—and activity that occurred on reservation trust land.  The application of the *Montana* rule to this matter could not be more inappropriate.

Even if this Court were to determine that the *Montana* rule does apply to this matter, Plaintiff's claim falls into both exceptions to that rule.  The exceptions are:  (1) the non-Indian entered into a consensual relationship with a tribe; or (2) the claims affect the tribal political integrity, economic security, health or welfare.  *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997).  There is no denying that Plaintiff was in a voluntary relationship with the Tribe as an employee.  Part of her compensation was the health benefits plan provided to Casino employees.  Her claim arises directly out of this voluntary relationship.  As to the second exception, her claims both impact the political integrity and economic security of the Tribe.  The very nature of her claim

calls for the review of a decision made by the Tribal Council.  Such claims must be reviewed by the Tribe's court.  Additionally, she is seeking monetary damages that will be paid either out of the Casino's operating money or directly from the Tribe's treasury.  Exhibit 1, ¶ 12.  In either case, it will have a large negative impact on the Tribe's finances if she were to prevail.  Thus, the *Montana* rule does not apply to this case, but even if it did, Plaintiff's claims fall within both exceptions to the rule.

It is not otherwise clear that the Tribe's court lacks jurisdiction.  To the contrary, based on the foregoing, it is clear jurisdiction does lie in the Tribe's court.

### III.    COMITY DICTATES THIS MATTER MUST BE DISMISSED OR STAYED FOR THE TRIBAL COURT TO DETERMINE ITS JURISDICTION AND THE PLAINTIFF TO EXHAUST HER TRIBAL COURT REMEDIES

As Plaintiff's alleged claims arose on reservation trust land and involves the Tribe, there is no basis to deny comity.  When the activity in question occurs on Indian land, these policies almost always dictate that the parties exhaust their tribal remedies.  *Texaco*, 5 F.3d at 1377; *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006).  Tribal exhaustion in these circumstances is an "inflexible bar" to consideration of the merits of the petition by a federal court.  *Texaco*, 5 F.3d 1377; *Kerr-McGee*, 115 F.3d at 1507.  In any event, the principles of comity are served under the facts of this case.

Congressional policies favoring tribal sovereignty will be served by the Tribe's court hearing this matter.  A decision made by the Tribal Council is squarely at issue in this matter. Having another sovereign's court sit in judgment over a decision of the Tribal Council diminishes the sovereignty of the Tribe.  Allowing the Tribe's decisions to be reviewed and considered by the Tribe's court bolsters Tribal sovereignty by recognizing that the Tribe's court is capable of rendering a just decision, even against the Tribe's government.  Comity will also promote the

orderly administration of justice by setting clear standards on the proper forum to hear disputes that arise on reservation trust land and involve tribal decisions.

Finally, the expertise of the Tribe's court will be useful to understand Tribal law on the decision making process of the Tribal Council and how it impacts issues alleged in Plaintiff's Complaint.  Sac and Fox tribal law governs many aspects at issue in this case including, but not limited to, the terms of the employment which Plaintiff had with the Casino, whether Plaintiff properly exhausted any administrative remedies available to her, and whether the agreements were properly approved by the Plan/Tribe.

Comity is uniquely appropriate in this matter given the relationship of the Plan to the Tribe. While these principles need not even be considered in the case, when considered, they weigh heavily in favor of comity.

It is beyond question that Plaintiff has not exhausted her Tribal court remedies; she has not sought any remedy from the Tribe's court.

**CONCLUSION**

The Plan's alleged decision to deny benefits would have occurred on the Tribe's reservation trust land and would have been made by the Tribal Council.  As such, this matter must be first heard in the Tribe's court for that court to determine its jurisdiction over this matter.  No exception to this applies in this case.  Principles of comity dictate that this Court dismiss or stay this action until the Tribe's court has had a full opportunity to evaluate its jurisdiction and Plaintiff has exhausted her remedies in the Tribal court.

Dated:  February 2, 2015

                              The Sac & Fox Casino Healthcare Plan
Defendant,


By:     /s/ Christopher C. Halbert
Christopher C. Halbert, KS#24328
Halbert, Dunn & Halbert, L.L.C.
112 S. 7th Street
P.O. Box 183
Hiawatha, Kansas 66434
Telephone: 785-288-6070
Fax: 785-742-7103
Email: chalbert@halbertdunn.com

Joseph V. Messineo (*Pro Hac Vice Pending*)
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, Nebraska  68116
Telephone:  402-333-4053
Fax:  402-333-4761
Email:  jmessineo@ndnlaw.com

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of February 2015, service of the foregoing Memorandum of Points and Authorities in Support of Motion to Dismiss for Failure to Exhaust Tribal Remedies was submitted electronically for filing and/or service with the United States District Court of Kansas. Electronic service of the foregoing document shall be made in accordance with the E-Service List as follows:

Dean Nash
Brian Franciskato
2300 Main Street, Suite 170
Kansas City, MO  64108
*Attorneys for Plaintiff*

Bradley J. Schlozman
Hinkle Law Firm LLC
301 North Main Street, Suite 2000
Wichita, KS  67202
*Attorney for Defendant Benefit Management, Inc.*

/s/ Christopher C. Halbert