IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

AMY COPPE

              Plaintiff,

  v.

                                         Case No. 14-2598-RDR

THE SAC & FOX CASINO
HEALTHCARE PLAN;
BENEFIT MANAGEMENT, INC.

              Defendants.

**MEMORANDUM AND ORDER**

This case is now before the court upon a motion to dismiss or stay for failure to exhaust tribal remedies. The motion is brought by defendant Sac & Fox Casino Healthcare Plan. This motion asks the court to rule as a matter of comity that before bringing a claim in this court, plaintiff must bring an ERISA action for recovery of insurance benefits under the casino's nongovernmental plan in tribal court. We assume for purposes of this order that plaintiff is not a member of the Sac & Fox Tribe and that the Plan is not a "governmental plan" as defined in ERISA. We hold that Congress has preempted the tribe's adjudicatory authority over ERISA claims and, therefore, exhaustion of tribal remedies is not required.[1]

---

[1] The parties' pleadings do not allege that plaintiff is a member of the Sac & Fox tribe. Although we assume that she is not, this assumption is not critical to the result which hinges mainly upon the conclusion that Congress has preempted tribal court jurisdiction over ERISA claims for nongovernmental plans.

1

I.   PLAINTIFF'S ALLEGATIONS

The amended complaint in this case alleges as follows. Plaintiff was an employee of the Sac & Fox Casino. In the summer of 2011, plaintiff, while still an employee of the casino, incurred substantial medical expenses in relation to a pregnancy and the birth of a premature baby. Plaintiff asserts that some or all of these expenses charged to her are the responsibility of defendant Sac & Fox Casino Healthcare Plan, which, she alleges, is an employee welfare benefit plan governed by ERISA. Defendant Benefit Management, Inc., an Oklahoma company, is alleged to be the Plan supervisor that administers claims for Plan benefits. The Plan had group health insurance through American Fidelity Assurance in 2011.[2] Defendants have refused to pay what plaintiff asserts is owed pursuant to the provisions of the Plan. Plaintiff asserts that she has exhausted her administrative remedies under the Plan and, specifically, that defendants Benefit Management, Inc. and the Plan have denied plaintiff's claims for payment. Plaintiff asserts, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), that defendants have wrongfully denied her claim for medical insurance benefits and seeks an order requiring their payment as well as other relief.

---

[2] This allegation is made as a "statement of fact" in response to the motion to dismiss. Defendant Plan does not dispute the allegation in its reply brief.

Plaintiff further alleges in response to the motion to dismiss that the Plan states that a Plan member <u>may</u> file a claim for benefits "in a state or federal court" and that there is no reference to tribal courts in the Plan. This allegation is not disputed in defendant Plan's reply brief.[3]

## II. DEFENDANT PLAN'S ALLEGATIONS

Defendant Sac and Fox Casino Healthcare Plan has submitted the following statements of fact in support of its motion to dismiss or to stay. The Sac and Fox Nation of Missouri in Kansas and Nebraska is a federally-recognized Indian tribe. The Sac & Fox Casino is a non-corporate operating arm of the tribe. The casino maintained a self-funded plan of healthcare benefits. Money to fund the plan came from the casino's general operating expenses. The Plan was managed by the tribe's council members who hired defendant Benefits Management Inc. as a third-party administrator. A judgment against the plan would likely come directly from the tribal treasury or the casino's general operating fund.[4]

---

[3] While plaintiff argues that this permissive provision constitutes a waiver of the right to proceed in tribal court, this argument itself could be decided by the tribal court and therefore does not persuade us that exhaustion is unnecessary for comity reasons. The holding cited by plaintiff, <u>C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma</u>, 532 U.S. 422 (2001), is not contrary to this position. It involved a mandatory provision which clearly waived tribal sovereign immunity as to arbitration proceedings that had already been conducted and appealed to state court. It did not involve an issue of tribal exhaustion on comity grounds and a permissive provision which is less than clear.

[4] Plaintiff disputes whether a judgment against the plan would likely come directly from the Tribal treasury or the casino's operating funds, arguing

III. PROCEDURAL POSTURE

Defendant Plan presents its motion as a FED.R.CIV.P. 12(b)(6) motion. Matters outside the pleadings have been presented by both sides. Therefore, pursuant to FED.R.CIV.P. 12(d), the motion will be treated in effect as one for summary judgment. We assume that there is no issue with this procedural approach.

Our ruling hinges primarily upon the legal force of ERISA's preemptive provisions, not issues of fact or the burden of proof. Nevertheless, we note that the Supreme Court has stated that the burden rests upon an Indian tribe to establish its authority over the activities of nonmembers of the tribe. Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 330 (2008). We further note that exhaustion issues are often treated as affirmative defenses and, as such, the burden of proving the defense rests on the defendant. See Jones v. Bock, 549 U.S. 199, 212 (2007)("the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense").

IV. ERISA

The ERISA law provides that a participant or beneficiary in the ERISA plan may bring an action to recover benefits due under

---

that the insurance company that issued the policy used by the Plan would be responsible. We find that this disputed fact is not material to the holding made in this order.

the plan.  29 U.S.C. § 1132(a)(1)(B).  State courts and federal district courts have concurrent jurisdiction over actions brought under § 1132(a)(1)(B).  29 U.S.C. § 1132(e).  This section does not reference tribal courts.

ERISA does not regulate so-called "governmental plans."  29 U.S.C. § 1003(b)(1). "Governmental plans" are defined to include "a plan which is established and maintained by an Indian tribal government . . . a subdivision of an Indian tribal government . . . or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)."  29 U.S.C. § 1002(32).  The motion to dismiss does not allege that the Plan in this case is a "governmental plan." As already mentioned, the court assumes that the Plan is a nongovernmental plan.

V.  TRIBAL COURTS DO NOT HAVE JURISDICTION OVER ERISA ACTIONS.

Tribal courts are not courts of "general jurisdiction." Nevada v. Hicks, 533 U.S. 353, 367 (2001).  Their inherent adjudicative jurisdiction over nonmembers is at most only as broad as their legislative jurisdiction.  Id.  Congress has not

5

purported to grant tribal courts jurisdiction over ERISA claims.[5] This was also the situation in Nevada, where the court held that there was no tribal court jurisdiction over an action under 42 U.S.C. § 1983 against a nonmember state law enforcement agent for actions taken upon reservation land to investigate an off-reservation crime. The Court held that tribal rights to make laws governing members and to regulate activity on the reservation did not exclude state authority (as exercised by nonmembers of the tribe) to investigate off-reservation crimes on the reservation. Id. at 362-64. The Court further held that permitting tribal court jurisdiction over the § 1983 claim would create a "serious anomaly" because the removal powers afforded § 1983 defendants in state court under 28 U.S.C. § 1441 would not be available to a similar defendant in tribal court. Id. at 368.

Here, we hold that tribal rights to make laws governing members and to regulate activity upon the reservation does not exclude federal authority as expressed in ERISA to occupy and preempt the field of ERISA rights enforcement for nongovernmental plans. We note that, if an ERISA claim was brought in tribal court against a nonmember defendant or if an ERISA claim against a nongovernmental ERISA plan had to be

---

[5] We acknowledge though that "[s]ilence is not sufficient to establish congressional intent to strip Indian tribes of their retained inherent authority to govern their own territory." N.L.R.B. v. Pueblo of San Juan, 276 F.3d 1186, 1196 (10th Cir. 2002).

6

brought first in tribal court, the same "serious anomaly" described in Nevada would be present.  The power of an ERISA defendant to remove the action to federal court, as exists for state court ERISA defendants, would not be present.  And, the right of an ERISA plaintiff to choose a federal forum at the outset of an action would be infringed.

This holding is supported, even as to members of a tribe, by the preemptive intent of Congress in passing ERISA.  In El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473 (1999), members of the Navajo Nation brought claims in the Navajo tribal court alleging that they were harmed by the conduct of uranium mining companies operating upon the reservation in violation of Navajo Nation law.  The Court held that the claims in tribal court could be enjoined by a federal district court order because the federal government, with the passage of the Price-Anderson Act, had preempted any state law and any tribal law claims arising from the mining of uranium or uranium ore and the byproducts of that activity.  This finding was based upon the Act's "unusual preemption provision" which the Court compared to the provisions of the Labor Management Relations Act and ERISA.  526 U.S. at 484 n 6.  The Court stated:

> The [Price-Anderson] Act not only gives a district court original jurisdiction over such a claim . . . but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court . . . Congress thus expressed an

7

> unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested.

Id. at 484-85.

The Supreme Court commented upon the similar preemptive force of ERISA in Aetna Health Inc. v. Davila, 542 U.S. 200, 208-09 (2004):

> Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. 1001(b).  The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
>
> ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." Russell, 473 U.S., at 147, 105 S.Ct. 3085. (internal quotation marks omitted).  This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. . . .
>
> In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947 (LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301

> LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal . . . so too does ERISA § 502(a)(1)(B). Thus, ERISA's civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life, 481 U.S., at 65-66, 107 S.Ct. 1542. Hence, "causes of action within the scope of the civil enforcement provisions § 502(a) [are] removable to federal court." Id. at 66, 107 S.Ct. 1542.

(emphasis added).

Defendant Plan asserts that the unique context of the Price-Anderson Act distinguishes the holding in Neztsosie from the facts in this case. We reject this argument because the Neztsosie opinion compares the Price-Anderson Act to ERISA, and the rights of removal set forth in the Price-Anderson Act (at 42 U.S.C. § 2210(n)(2)) and those recognized by the Court and Congress in ERISA actions are similar. As the Court stated in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987) in language similar to that used in Neztsosie: "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [or 29 U.S.C. § 1132(a)] removable to federal court." In Taylor, as in this case, the plaintiff was making a claim for benefits under an ERISA plan, although plaintiff in Taylor styled his claims as being made under state law.

9

Defendant Plan also argues that ERISA does not provide for federal preemption of benefit claims under § 1132(a)(1)(B) because state courts have concurrent jurisdiction over such claims under § 1132(e). This is not a significant distinction because the Price-Anderson Act also permits concurrent jurisdiction in state court. Removal is required under 42 U.S.C. § 2210(n)(2) only upon a motion of a defendant. The key point is that access to a federal forum must be allowed to ERISA defendants and plaintiffs and that such access via removal would be denied to ERISA defendants if tribal courts had jurisdiction to decide ERISA claims, and such access for ERISA plaintiffs would be denied or at least infringed if cases were forced to be brought initially in tribal court.

VI. THE GOVERNMENT'S PREEMPTIVE ACTION UNDER ERISA DICTATES THAT EXHAUSTION IN TRIAL COURT SHOULD NOT BE REQUIRED AS A MATTER OF COMITY.

In <u>Montana v. United States</u>, 450 U.S. 544 (1981), the Court held in general that the sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. But, two exceptions were noted:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships through commercial dealing, contracts, leases, or other arrangements. . . . A tribe may also retain inherent power to exercise civil authority over the conduct of

>  non-Indians on fee lands within its reservation when
>  that conduct threatens or has some direct effect on
>  the political integrity, the economic security, or the
>  health or welfare of the tribe.

450 U.S. 565-66.

In Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997), the Court said that the rule described in Montana applies to the adjudicatory authority of tribal courts:

> As to nonmembers, . . . a tribe's adjudicative
> jurisdiction does not exceed its legislative
> jurisdiction. Absent congressional direction
> enlarging tribal-court jurisdiction, we adhere to that
> understanding. Subject to controlling provisions in
> treaties and statutes, and the two exceptions
> identified in Montana, the civil authority of Indian
> tribes and their courts with respect to non-Indian fee
> lands generally "do[es] not extend to the activities
> of nonmembers of the tribe."

(Quoting Montana, 450 U.S. at 565). But, the application of these exceptions does not control when there is an express jurisdictional prohibition or it is otherwise clear that the tribal court lacks jurisdiction. Nevada, 533 U.S. at 369; Burrell v. Armijo, 456 F.3d 1159, 1168 (10th Cir. 2006) cert. denied, 549 U.S. 1167 (2007). Here, we have held that it is clear that the tribal court lacks jurisdiction. So, we need not consider exhaustion of tribal court remedies as a matter of comity.

One other court has made a similar holding. The United States District Court for the Northern District of Oklahoma relied upon Neztsosie to hold that it should not abstain from

11

determining an ERISA benefits claim while the plaintiff proceeded in tribal court. <u>Vandever v. Osage Nation Enterprise, Inc.</u>, 2009 WL 702776 *5 (N.D.Okla. 3/16/2009). See also, <u>Peabody Holding Company, LLC v. Black</u>, 2013 WL 2370620 *6 (D.Ariz. 5/29/2013)(citing <u>Vandever</u> in support of a refusal to abstain from deciding an ERISA claim brought by a fiduciary involving competing claims of tribal members residing on Navajo land).

VII. CONCLUSION

For the above-stated reasons, the court shall deny defendant Plan's motion to dismiss (Doc. No. 8).

**IT IS SO ORDERED.**

Dated this 13th day of March, 2015, at Topeka, Kansas.

s/ RICHARD D. ROGERS  
Richard D. Rogers  
United States District Judge