IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY COPPE,<br><br>          Plaintiff,<br><br>     v.<br><br>THE SAC & FOX CASINO HEALTHCARE PLAN,<br><br>          Defendant. | Case No. 2:14-cv-2598 |

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ............................................................................................................................... 1

I.     Plaintiff Conflates Two Separate Legal Theories To Assert Waiver Of Sovereign ...............
    Immunity in ERISA. .......................................................................................................... 1

II.    The Permissive Language As To Plaintiff Bringing An Action In Federal Court
    Does Not Constitute A Waiver Of Sovereign Immunity ........................................................ 3

III.   ERISA Does Not Waive Sovereign Immunity, And The Plan Is A Subordinate
    Tribal Entity Imbued With The Tribe's Sovereign Immunity ............................................... 5

CONCLUSION ............................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*Ameriloan v. Superior Court*, 169 Cal.App.4th 81 (2009) ............................................................... 6

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) ............................................. 2

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino Resort*,
   629 F.3d 1173 (10th Cir. 2010) ................................................................................................. 6, 7

*C&L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Okla.*,
   532 U.S. 411 (2001) ................................................................................................................ 1, 4, 5

*Cash Advance v. Colorado*, 242 P.3d 1099 (Colo. 2010) ................................................................ 6

*Demontiney v. United States*, 255 F.3d 801 (9th Cir. 2001) ............................................................ 4

*Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275 (10th Cir. 2010) ............................ 3

*Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians*, 166 F.3d 1126
   (11th Cir. 1999) ................................................................................................................................. 2

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998) ................. 7

*Makarova v. United States,* 201 F.3d 110 (2d Cir.2000) ................................................................. 3

*Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024 (2014) ................................................. 1

*Miner Elec. v. Muscogee (Creek) Nation*, 505 F.3d 1007 (10th Cir. 2007) .................................... 2

*Nanomantube v. Kickapoo Tribe*, 631 F.3d 1150 (10th Cir. 2011) .................................................. 3

*Native Am. Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288 (10th Cir. 2008) ........... 6

*Osage Tribal Council, ex.rel. Osage Tribe Of Indians v. United States*, 187 F.3d 1174
   (10th Cir. 1999) ................................................................................................................................. 2

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978) ....................................................................... 1

*Ute Indian Tribe Of The Uintah and Ouray Reservations v. Utah*, Nos. 14-4028, 14-4-31, 14-4-
   34, 2015 WL 3705904 (10th Cir. June 16, 2015) ................................................................... 3, 5

*Vandever v. Osage Nation Enterprises, Inc.*, No.06-CV-380-GKF-TLW, 2009 WL 702776
   (N.D.Okla. Mar. 16, 2009) ........................................................................................................ 2, 3

**Statutes**

25 U.S.C. § 4301 ................................................................................................................................. 7

iii

The law of tribal sovereign immunity is so well established that Plaintiff does not even attempt a challenge at these principles. Plaintiff argues that ERISA or the Plan documents waive immunity, or that the Plan is not covered by immunity. Unfortunately for Plaintiff, equally well established in the law is that waivers must be "clear and unequivocal" and that subordinate entities of a tribe also enjoy the tribe's immunity. Plaintiff fails to prove a clear and unequivocal waiver. Additionally, even assuming the Plan is a separate entity from the Tribe, it, too, is protected by the Tribe's sovereign immunity. This Court lacks subject matter jurisdiction over this action and it must be dismissed.

## ARGUMENT

### I. Plaintiff Conflates Two Separate Legal Theories To Assert Waiver Of Sovereign Immunity In ERISA.

It is beyond question that there is no explicit waiver of sovereign immunity within the language of ERISA. Nor is there a "specific textual basis" to support the finding of a waiver. Plaintiff has been forced to conflate two separate legal issues in order to cobble together a waiver of sovereign immunity. Plaintiff has asserted that because tribes are *subject* to ERISA, that ERISA has *waived* sovereign immunity. This is simply an incorrect legal position. Even where a tribe is subject to a federal law, that federal law must still provide for the requisite waiver of sovereign immunity for a private litigant to maintain an action against an Indian tribe. No such waiver exists in ERISA.

To abrogate tribal sovereign immunity by statute, "Congress must unequivocally express that purpose. *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2034 (2014); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *C&L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001). Although a waiver need not be express, there

1

must be a "specific textual basis" in the statute to support a waiver. *Osage Tribal Council, ex.rel. Osage Tribe Of Indians v. United States*, 187 F.3d 1174, 1181 (10th Cir. 1999). Waiver cannot be implied. *Miner Elec. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1010 (10th Cir. 2007). Plaintiff argues at length that the Tribe's Plan is a commercial and not a governmental plan and thus is subject to ERISA. This is a red herring; whether or not the plan is subject to ERISA does not address the issue of waiver.

The law is well established: even where a tribe is subject to a federal statute, Congress must still unequivocally waive sovereign immunity as to private litigants. *Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1130 (11th Cir. 1999); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000). In *Florida Paraplegic Ass'n*, the court found that tribes were subject to the Americans With Disabilities Act. *Florida Paraplegic Ass'n*, 166 F.3d at 1130. However, the court opined "The Analysis does not stop [there] . . . for whether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Id.* (emphasis in the original). Finding no textual basis for a waiver, the court granted the tribe's motion to dismiss based on sovereign immunity. *Id.* at 1133.

Plaintiff asserts that "If the Plan is subject to ERISA, then it logically follows that Defendants cannot avail itself of sovereign immunity." Plaintiff's Response to Defendant Sac and Fox Casino Healthcare Plan's Motion to Dismiss, p. 5. As set forth in the preceding paragraph, this assertion is legally incorrect. Plaintiff is able to cite one case that supports this incorrect legal position. In *Vandever v. Osage Nation Enterprises, Inc.*, No.06-CV-380-GKF-TLW, 2009 WL 702776 (N.D.Okla. Mar. 16, 2009), an unreported decision, the court ruled that the 2006 amendment to ERISA that created the government/commercial plan distinction constituted a

2

waiver of sovereign immunity.  The *Vandever* decision relies almost exclusively on *Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275 (10th Cir. 2010).  The *Vandever* court opined that "implicit" in the *Dobbs* decision is tribal commercial plans are "subject" to ERISA and thus, ERISA abrogates sovereign immunity.  *Vandever*, 2009 WL 702776, at 4.

This Court should not follow *Vandever* for two reasons.  First, its reliance on *Dobbs* to support a waiver of tribal sovereign immunity in ERISA is highly dubious.  *Dobbs* did not address sovereign immunity at all.  In fact, the tribe involved was not even a named party, only an Amicus Curiae.  The *Dobbs* court, thus, had no occasion to even consider sovereign immunity.  Second, *Vandever*'s conclusion is not consistent with the law.  *Vandever* concludes that "tribal plans are *subject* to ERISA unless they meet the amended definition of a 'government' plan."  *Id.* at 4 (emphasis added).  While this statement is correct, *Vandever* then makes the impermissible leap that being subject to a law equates to an abrogation of immunity.  *Id.*  It does not find any textual, let alone specific, basis for a waiver.  It implied a waiver in the amendment.  The most that can be gleaned from the text of ERISA is that commercial plans are *subject* to ERISA.  But this does not equate to a waiver tribal sovereign immunity which must be state unequivocally.  *Vandever* should not be followed by this Court.

### II. The Permissive Language As To Plaintiff Bringing An Action In Federal Court Does Not Constitute A Waiver Of Sovereign Immunity.

Tribal waivers of sovereign immunity "must be expressed 'clearly and unequivocally.'" *Ute Indian Tribe Of The Uintah and Ouray Reservations v. Utah*, Nos. 14-4028, 14-4-31, 14-4-34, 2015 WL 3705904, at *8 (10th Cir. June 16, 2015), citing *Nanomantube v. Kickapoo Tribe*, 631 F.3d 1150, 1152 (10th Cir. 2011).  Additionally, Plaintiff has the burden of proof that the waiver exists and that this Court has subject matter jurisdiction.  *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (ruling that plaintiff  bears the burden of proving by a

3

preponderance of evidence that jurisdiction exists in response to a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction).

Plaintiff argues that a permissive forum selection clause contained in the Plan documents constitutes a clear and unequivocal waiver of sovereign immunity. Plaintiff relies primarily on *C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001). Plaintiff's argument misses the mark. Contrary to Plaintiff's assertions, *C&L Enterprises* simply does not stand for the proposition that a permissive venue selection clause constitutes a waiver of sovereign immunity. It does not support this proposition. Not only is Plaintiff's discussion of *C&L Enterprises* wrong and overstated, it also runs counter to the strong presumptions against finding waivers of sovereign immunity. *See Demontiney v. United States*, 255 F.3d 801, 811-12 (9th Cir. 2001).

The *C&L Enterprises* court's analysis focused on a *mandatory* arbitration agreement that specifically provided for the enforcement of the arbitration award against the tribe.[1] In fact, that court stated that the "case concerns the impact of an arbitration agreement on a tribe's plea of suit immunity." *C&L Enterprises*, 532 U.S. at 414. Moreover, in setting out its ruling, the *C&L Enterprises* court provided that "[w]e hold that, by the clear import of the arbitration clause, the Tribe is amenable to a state-court suit to enforce an arbitral award . . ." (emphasis added). *Id.*

As the opinion in *C&L Enterprises* shows, what was of critical importance to the Supreme Court was that the tribe there knowingly agreed to the enforcement of any award would occur in state courts. *Id.* at 422. Therefore, the court found that because the tribe waived its immunity to an adjudicatory process, it also waived its immunity to enforcement actions. Otherwise, the court

---

[1] This Court in its March 13, 2015 Order at footnote 3 has already recognized the significance between the mandatory nature of the arbitration agreement at issue in *C&L Enterprises* and the permissive nature of the forum selection clause in the Plan documents.

4

notes, the agreement to participate in the arbitration process would have no practical consequences. *Id.* at 422. However, the forum selection clause in that agreement was merely a bit part in the entire process of deciding and enforcing judgments. Here, unlike in *C&L Enterprises*, the Tribe did not agree to any process. The clause contained in Plan documents sets forth only a truism under ERISA: plaintiff can file an action if she so chooses. Having a cause of action does not equate to a waiver of a defendant litigant's defenses. This clause is not sufficient to constitute a clear and unequivocal waiver of sovereign immunity.

In any event, the Plan ceased to exist and the Plan documents ceased as effective documents no later than November 20, 2011. *See* Affidavit of Martin R. Gist ("Gist Aff."), ¶ 6. No action, administratively under the Plan or in a court, was taken while the Plan was in existence. The Tenth Circuit has taken a dim view of finding waivers in defunct agreements.

> Neither do the State or Counties explain how these agreements, even assuming they might once have authorized suit, continue to do so much so long after they've expired. Instead, the defendants leave that possibility to the court's imagination- and that's never a substitute for a clear and unequivocal waiver.

*Ute Indian Tribe*, 2015 WL 3705904, at *8. Plaintiff is asking nothing different of this Court but to conjure a waiver where none exists from a dead agreement. This cannot constitute a clear and unequivocal waiver.

### III. ERISA Does Not Waive Sovereign Immunity, And The Plan Is A Subordinate Tribal Entity Imbued With The Tribe's Sovereign Immunity.

Conceding for the sake of this argument that the Plan is an entity separate from the Tribe and that Plaintiff's claims are against the Plan, the result does not change. The Plan shares in the Tribe's sovereign immunity and, as argued above and in the Opening Brief, ERISA does not waive tribal sovereign immunity and neither do the Plan documents.

It is well established in the law that subordinate economic and political entities of a federally-recognized tribe enjoy the same sovereign immunity as the Tribe. *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010); *Native Am. Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1292 (10th Cir. 2008); *Ameriloan v. Superior Court*, 169 Cal.App.4th 81, 97 (2009); *Cash Advance v. Colorado*, 242 P.3d 1099, 1107-08, 1109 (Colo. 2010).

> Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity.

*Breakthrough Management*, 629 F.3d at 1183. *Breakthrough* sets forth six factors in making the foregoing determination, although there are no "precise boundaries." *Id.* at 1187. The *Breakthrough* factors are: (1) Method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities. *Breakthrough*, 629 F.3d at 1181. The Plan easily meets each of the factors.

First, the Plan was unquestionably created by the Tribal Council. Gist Aff. ¶ 7. Second, the purpose of the Plan was to assist the Tribe in managing its Casino. Gist Aff. ¶ 9. Third, the Casino itself has no separate legal existence from the Tribe and the Tribal Council managed the Plan directly. Gist Aff. ¶¶ 5 & 11. Fourth, as the casino unquestionably has sovereign immunity and the Plan is part of the casino operations, it would be nonsensical that the Tribe would intend that the Plan not enjoy sovereign immunity. Fifth, the Plan was funded from the Casino's operating budget and payment for any judgment entered by this Court would likely come from the Tribe's

treasury or the Casino's operating budget. Gist Aff. ¶¶ 10 & 13. Sixth, extending sovereign immunity to the Plan would serve the paramount Congressional policy and goal of tribal economic development and self-determination. *See* 25 U.S.C. § 4301(12)(A) through (C) ("the twin goals of economic self-sufficiency and political self-determination for Native Americans can best be served. . ."); *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 757 (1998) ("that Congress had failed to abrogate [sovereign immunity] in order to promote economic development and tribal self-sufficiency.") Gaming is intended to be a cornerstone of this policy. As set forth above the Tribe's sole purpose in creating the Plan was to help it manage its casino operations. Therefore, the Plan is an important element in the Tribe achieving the stated Congressional goals of economic development and self-determination. Extending sovereign immunity to the Plan would be in lock-step with stated Congressional policies.

Under principles set forth in *Breakthrough*, it is clear that the Plan, even as a separate legal entity from the Tribe, is still a subordinate entity of the Tribe and protected by tribal sovereign immunity.

## CONCLUSION

The principles of tribal sovereign immunity are well established in the law. Plaintiff has failed to show that ERISA waives sovereign immunity. Nor is there a clear and unequivocal waiver in the Plan documents. The Plan itself is a subordinate entity of the Tribe and entitled to sovereign immunity in its own right. This Court lacks subject matter jurisdiction over this case and it must be dismissed.

Dated:  August 10, 2015

                                  The Sac & Fox Casino Healthcare Plan Defendant,

By:      /s/ Christopher Halbert
        Christopher Halbert, Bar No. 24328
        Halbert, Dunn & Halbert, L.L.C.
        112 S. 7th Street
        P.O. Box 183
        Hiawatha, Kansas 66434
        Telephone: 785-288-6070
        Fax: 785-742-7103
        Email: chalbert@halbertdunn.com

        Joseph V. Messineo (*Pro Hac Vice*)
        Fredericks Peebles & Morgan LLP
        3610 North 163rd Plaza
        Omaha, Nebraska  68116
        Telephone:  402-333-4053
        Fax:  402-333-4761
        Email:  jmessineo@ndnlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of August 2015, service of the foregoing **Defendant's Reply in Support of Motion to Dismiss** was submitted electronically for filing and/or service with the United States District Court of Kansas. Electronic service of the foregoing document shall be made in accordance with the E-Service List as follows:

Dean Nash
Brian Franciskato
2300 Main Street, Suite 170
Kansas City, MO  64108
*Attorneys for Plaintiff*

                                                          /s/ Christopher Halbert