# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY COPPE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:14-cv-02598-GLR** |
| | ) |
| THE SAC & FOX CASINO | ) |
| HEALTHCARE PLAN, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

By her complaint (ECF 1) Plaintiff claims benefits under 29 U.S.C. Sec. 1132(a)(1)(B) (part of the Employee Retirement Income Security Act of 1974) (hereinafter "ERISA"). The parties have consented for a magistrate judge to exercise civil jurisdiction in this case, and the Court has so ordered. (ECF 29.) The Court here addresses Defendant's Motion to Dismiss (ECF 31). Pursuant to Fed. R. Civ. P. 12(b)(2), it asserts a defense that the Court lacks jurisdiction of the subject matter of this case, because Defendant has tribal sovereign immunity and can be sued only in its own tribal court. The Sac & Fox Nation is a federally recognized, native American tribe. The motion also asserts that ERISA does not waive sovereign immunity as a defense for the claims of Plaintiff. (ECF 32 at 2-5.)

Plaintiff argues, to the contrary, that the instant motion should be denied for three reasons: First, Congress has indicated that ERISA is applicable to the tribal plans at issue in this dispute. Second, Defendants waived tribal immunity contractually. Third, the Sac and Fox Nation is not the Defendant, only The Sac and Fox Casino Healthcare Plan, which does not have the defense of sovereign immunity (ECF 34).

In its reply memorandum Defendant contends the following: 1) Congress did not explicitly waive sovereign immunity in ERISA. 2) The language in the contract that authorizes a law suit in this Court is merely permissive and does not waive sovereign immunity.  3) The Plan is a subordinate entity of the Sac and Fox Nation and is imbued with the tribe's sovereign immunity (ECF 37).

## I.    Facts

The Sac and Fox Nation of Missouri in Kansas and Nebraska is a federally-recognized Indian tribe.  *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 80 Fed. Reg. 9 (January 14, 2015).  The Affidavit of Martin R. Gist, Director of Finance for the Sac and Fox Casino (ECF 32-1), sets forth the following facts: The Sac & Fox Casino ("Casino") is a non-corporate operating arm of the Sac and Fox Nation of Missouri in Kansas and Nebraska.  (*Id.* at ¶ 5.)  From December 1, 2010, to November 30, 2011, the Casino maintained a self-funded plan of employee healthcare benefits (hereinafter the "Plan"), available to all full time employees of the Casino.  (*Id.* at ¶ 6, 7.)  The money to fund the Plan was allocated from the Casino's general operating expenses and was managed by the Tribe's Council members.  (*Id.* at ¶ 8, 9.)

Plaintiff is not a member of the Sac & Fox Indian Tribe.  (ECF 34-1.)  But she worked at the Sac & Fox Casino from 1997 to February 2012 as a deli clerk in the food service department and as a security officer inside the Casino (*Id.* at ¶ 7, 8.  The Plan document contains a section that details the rights of a Plan participant under ERISA.  (ECF 34-2 at 2–3.)  This section of the Plan states that suit may be brought in federal court in at least four instances: 1) if requested materials are not received from the Plan Administrator within 30 days; 2) if a claim for benefits is denied or ignored in whole or in part; 3) if the Plan fiduciaries misuse the Plan's money; or 4)

if the Plan member is discriminated against for asserting his or her rights.  (*Id.* at 47.)  The instant case arises out of the second scenario contemplated by the Plan.  Plaintiff alleges she was denied benefits under the Plan. "The Sac & Fox Casino Healthcare Plan" is identified as the Plan Sponsor and Plan Administrator on the Plan.  (*Id.* at 54.)  "The Sac & Fox Casino Benefit Plan" is identified as the Plan Sponsor and Administrator on its standard ERISA regulatory filings with the Internal Revenue Service and Department of Labor.  (ECF 34-3.)

## II.    ERISA

In 2006 Congress amended ERISA to exclude some tribal benefit plans from ERISA's coverage.  ERISA excludes "governmental plans" from coverage.  *Geroux v. Assurant, Inc.*, No. 2:08-CV-00184, 2010 WL 1032648, at *4 (W.D. Mich. Mar. 17, 2010) (citing 29 U.S.C. § 1003(b)(1)).  The provisions of ERISA pertinent to the instant motion read as follows:

29 U.S.C. § 1003 – Coverage

(a)  In general

Except as provided in subsection (b) or (c) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

(b) Exceptions for certain plans

The provisions of this subchapter shall not apply to any employee benefit plan if—

(1) such plan is a governmental plan (as defined in section 1002 (32) of this title);

29 U.S.C. § 1002(32) defines a governmental plan (in relevant part) as follows:

> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government . . . a subdivision of an Indian tribal government . . . or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).

## III.     Legal Standard

Indian tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  This immunity exists in order to foster Indian self-governance, *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986).  And this is due to the fact that Indian tribes are distinct political entities that pre-date the ratification of the Constitution. In addition to fostering the federal goals of tribal self-governance, sovereign immunity also is a necessary corollary to furthering economic development and cultural autonomy.  *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort et al.*, 629 F.3d 1173, 1182 (10th Cir. 2010) (citation omitted).

Indian tribes are not subject to suit in federal or state court, unless Congress has abrogated the tribe's sovereign immunity or the tribe has waived it voluntarily.  *Nanomantube v. Kickapoo Tribe In Kansas*, 631 F.3d 1150, 1152 (10th Cir. 2011).  This immunity is not absolute, because Congress has superior and plenary authority to limit, modify, or eliminate the powers of local self-government which the tribes otherwise possess.  *Santa Clara Pueblo*, 436 U.S. at 56–57 (citations omitted). Whether the absence of sovereign immunity is a result of Congressional abrogation or voluntary tribal waiver, it must be unequivocally expressed rather than implied.

4

*Id.* at 58.  "[D]oubtful expressions of legislative intent must be resolved in favor of the Indians." *South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 506 (1986).

## IV.    Analysis

Plaintiff first argues that Congress waived the tribe's sovereign immunity by expressly making Indian Tribe benefit plans subject to ERISA.  (ECF 34 at 3.)  The statutory language, Congressional intent, and case precedent all support the contention that ERISA applies to employee benefit plans such as this one.  Statutory authority, 29 U.S.C. § 1003, makes it clear that ERISA applies to **any** employee benefit plan involved in **any** commercial enterprise, except those specifically exempted in 29 U.S.C. § 1003(b).

The Supreme Court of the United States has held that general statues—worded to apply to all persons—also apply to Indians and their property interests. *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960).  When Congress enacts statutes applicable to all persons subject to federal jurisdiction who are not specifically excluded, Indians and Tribes are also bound by them.  *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932 (7th Cir. 1989).

The statutory language of ERISA in 29 U.S.C. § 1003(b)(32) demonstrates that Congress specifically intended for Indian tribes to maintain sovereign immunity for some employee benefit plans and to abrogate it for others.  The language makes it clear that the exemption from the requirements of ERISA applies if **all** the employees in the plan established by an Indian tribe are "in the performance of essential governmental functions but not in the performance of commercial activities [whether or not an essential government function]."

Congress's 2006 amendments to ERISA constitute an unequivocal waiver of sovereign immunity for tribal employee plans that perform *commercial* functions.  Even before those amendments, circuit courts found ERISA applicable to Indian tribes whose employees performed

non-governmental functions.  *Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*, 939 F.2d 683 (9th Cir. 1991); *Smart*, 868 F.2d at 929.

The Tenth Circuit has cited legislative history, suggesting that Congress amended ERISA, in order to clarify the legal ambiguity as to the status of employee benefit plans established and maintained by tribal governments. *Dobbs v. Anthem Blue Cross and Blue Shield*, 475 F.3d 1176, 1178 (10th Cir. 2007) (citing 150 Cong. Rec. S9526, 9533). The amendment clearly distinguishes "essential governmental functions" from "commercial activities." *Id.*  The governmental plan exemption will not apply to every plan an Indian tribe establishes.  Instead, determinations as to whether a tribal plan qualifies as a governmental plan under 29 U.S.C. § 1002(b)(32) "requires a fact-specific analysis of the plan at issue and the nature of its participants' activities." *Id.*  A plan will only be classified as a governmental plan, moreover, if an Indian tribal government establishes and maintains it and all of the plan participants  are employees primarily engaged in essential governmental functions rather than commercial activities.  *Dobbs v. Anthem Blue Cross & Blue Shield,* 600 F.3d 1275, 1285 (10th Cir. 2010). This standard is applicable, even if a tribal commercial activity is essential to the functioning of the tribal government. *Id.*

Plaintiff herself was a deli clerk and a security guard at the Casino.  The Casino is unquestionably a commercial enterprise, as Defendant does not contend that the Casino is an essential government function.

Plaintiff also argues that Defendant waived sovereign immunity through the Plan's contract plain language.  Absent Congressional abrogation of sovereign immunity, Indian tribes are barred from suit unless they waive sovereign immunity voluntarily.  In order for tribal waiver to eliminate the defense of sovereign immunity, the tribal waiver must be "clear." *Okla. Tax*

*Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.,* 498 U.S. 505, 509 (1991); *C&L*

*Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.,* 532 U.S. 411, 418 (2001).

   The Tenth Circuit has classified an action arising pursuant to a denial of benefits under

ERISA as a breach of contract action. *Pratt v. Petroleum Prod. Mgmt., Inc. Emp. Sav. Plan &*

*Trust,* 920 F.2d 651, 658 (10th Cir. 1990).

   The Plan states that Plaintiff has the option to file suit in federal court, in order to recover

benefits owed to her under the Plan.   (ECF 34-2.)   The Plan also specifically states that

Participants in the Plan are entitled to "certain rights and protections" under ERISA.  (*Id.* at 2.)

The Plan further details steps Members may take to enforce their rights under ERISA.   The

relevant paragraph reads:

> Under ERISA, there are steps the Plan member can take to enforce the
> above rights. For instance, if the Plan member requests materials from the Plan
> Administrator and does not receive them within thirty (30) days, the Plan member
> may file suit in a federal court. In such a case, the court may require the Plan
> Administrator to provide the materials and pay the Plan member up to $100 a day
> until the Plan member receives the materials, unless the materials were not sent
> because of reasons beyond the control of the Plan Administrator. If the Plan
> member has a claim for benefits which denied or ignored in whole or in part, the
> Plan member may file suit in a state or federal court. If it should happen that Plan
> fiduciaries misuse the Plan's money, or if the Plan member is discriminated
> against for asserting his/her rights, the Plan member may seek assistance from the
> U.S. Department of Labor, or the Plan member may file suit in a federal court.

(*Id.* at 3.)

   Both the clear language of the Plan itself and case precedent require the interpretation

that this is a clear waiver of sovereign immunity. When sovereign immunity is waived, the

Court's jurisdiction is governed by the terms of the sovereign's consent to be sued.  *Reynolds v.*

*United States*, 643 F.2d 707, 713 (10th Cir. 1981) (citing *United States v. Sherwood*, 312 U.S.

584 (1941); *Buck v. United States*, 466 F.2d 481 (10th Cir. 1972)). The Plan clearly contains

Defendant's consent to suit in this Court, if Plan members do not receive materials, if their

benefits are denied, if they are victimized by fiduciaries misusing plan money, or if they are discriminated against for asserting their rights.   The language of the Plan also asserts that Defendant consents to jurisdiction in state or federal court for denial of benefits, which further demonstrates that this language defines the scope of consent to suit.

The Supreme Court of the United States has addressed an analogous case in *C&L Enterprises,* 532 U.S. 411, unanimously ruling that the tribe waived sovereign immunity through contractual language.   There the choice-of-law and arbitration clauses were clear waivers of sovereign immunity.   *Id* at 420.   The Court noted that the Tribe had drafted the contract and ruled that the waiver of sovereign immunity was clear and the Tribe was subject to suit.   *Id.*

Here the language of the Plan is also clear: "If the Plan member has a claim for benefits which is denied or ignored in whole or in part, the Plan member may file suit in a state or federal court."   (ECF 34-2 at 3.)   Plaintiff alleges she was denied benefits and has thus elected to file her suit in federal court.

Defendant argues that this case is distinguishable from *C&L Enterprises,* however, because the contract in that case made arbitration mandatory in the event of a dispute, whereas the Plan in this case merely gives its members the option to sue in federal court.   Defendant thus contends in substance that voluntary waiver of sovereign immunity only exists if a choice of law clause is mandatory—rather than permissive.   The Court disagrees.   Like the defendant in *C&L Enterprises*, Defendant drafted the contract. It included the procedural steps for a Plan Member to pursue recovery.   If a Plan member was denied benefits, she may file suit in federal court. This is a clear waiver of sovereign immunity.   It subjects Defendant to the jurisdiction of this Court for the purpose of this case.

On September 23, 2015, the Court entertained oral arguments upon the instant motion. It raised the question of the extent, if any, to which the holding by District Judge Richard Rogers (ECF 15), denying the earlier motion to dismiss, has created the law of the case for the instant motion and thus requires us to sustain it. The Court finds it unnecessary to decide that issue at this point and thus does not rely upon it for its ruling here. Nevertheless, the Court finds Judge Rogers' reasoning and decision persuasive, as it relates to the current motion.

V.    **Conclusion**

Because of the unequivocal Congressional abrogation of sovereign immunity under 29 U.S.C. § 1003(b)(32) and the Plan's clear contractual waiver of sovereign immunity, the Court finds that it has jurisdiction over the subject matter of this action.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (ECF 31) is DENIED.

Dated this 5th day of November, 2015.

<u>S/Gerald L. Rushfelt</u>
Gerald L. Rushfelt
U.S. Magistrate Judge